JOHNSON *vs.* THE BRADSTREET COMPANY.

Where a commercial agency contracted, for a consideration, to collect and furnish information to its subscribers concerning the standing of merchants in various parts of the United States, and sent out by carrier to two subscribers a written or printed slip containing statements to the effect that a certain merchant was drinking and failing in business, and another to the effect that such person had not improved, and in both instances stating that it would be well to watch and to be slow to trust him, which slips were kept in the stores of the subscribers for some days and were seen by the clerks and perhaps others, such statements were not privileged communications, and if false, they furnished a ground for the recovery of damages by the person libelled.

(*a.*) The contract to pry into and give information concerning the business of another does not create such a public or private duty, legal or moral, as would make a false communication injurious to another, privileged.

(*b.*) The falsity of a communication, in printing or writing, maligning the private character and mercantile standing of another is itself evidence of legal malice, and unless it be strictly a privileged communication in the performance of a public duty or a private duty, moral or legal, and then *bona fide* and not as a cloak for private malice, a right of action arises.

October 26, 1886.

Libel. Privileged Communications. Before Judge VAN EPPS. City Court of Atlanta. June Term, 1886.

James Johnson brought suit against the Bradstreet Company to recover damages for a libel. The evidence is sufficiently stated in the decision. On the trial, the jury found for the defendant. The plaintiff moved for a new trial, the leading ground of the motion being:

Because the court erred in charging the jury as follows: "If, as alleged by the plaintiff in this declaration, the Bradstreet Company is a corporation, which keeps on file at its various offices in the United States, and furnishes to all persons who pay therefor, information as to the worth and character of all persons engaged in mercantile pursuits; and if the jury believe from the evidence that the witnesses, Wyly and Elam Johnson, were subscribers of the defendant, and the defendant was under a duty to furnish information as to the standing of merchants; and if the jury further believe from the evidence that the said Wyly and Johnson were patrons of the plaintiff, and accustomed to sell him goods, and interested in the question of his business and standing as a merchant; and if the jury further believe from the evidence that the defendant, in good faith, and acting upon information upon which it relied, furnished upon request or volunteered information in writing as to the business and standing of the plaintiff to the said Wyly and Johnson, and to none other not similarly situated, then the information thus furnished by the defendant was a privileged communication within the meaning of the law, and operates to bar the plaintiff's action, unless the evidence shows the existence of express malice as to the motive of the publication.".

The motion was overruled, and the plaintiff excepted.

T. P. WESTMORELAND; JAS. MAYSON; R. ARNOLD, for plaintiff in error.

CANDLER, THOMSON & CANDLER, for defendant.

JACKSON, Chief Justice.

The plaintiff in error sued the Bradstreet Company for a libel. Under the charge of the court, the jury found for the defendant. The plaintiff excepted to the refusal of a new trial, and assignments of error thereon are before us.

The main question is, whether or not the publication of the libel is a privileged communication, under the statutes of this state, in the light of the facts in this record. The Bradstreet Company, through an agent in Atlanta, sent around by a boy to certain of their contractors a slip of printed and written paper to the effect that the plaintiff in error was drinking and failing in business, and another to the effect that he had not improved, and in both that it would be well to watch and to be slow to trust him. The proof is made by Elam Johnson and B. F. Wyly, who swear substantially to the printed or written slip as the same as that alleged in the amended declaration, the original sent them having been thrown in the waste-basket or otherwise lost so as not to be produced. The slips were kept in the store and seen by clerks, and possibly by others, as they lay there for some days. It appears that it is the business of this company in New York to furnish information, for consideration paid them, touching the standing of merchants in various parts of the United States; that Messrs. Johnson and Wyly were contractors with the company for such information; and being such contractors, the question is, was the communication, so sent to them by the carrier boy of the company's Atlanta agent, a privileged communication or not, under the statute of this state in section 2980 of the Georgia Code?

That section declares as privileged communications: "1. Statements made *bona fide* in the performance of a public duty. 2. Similar statements in the performance of a private duty, either legal or moral;" and then follow others not germane to the issue before us.

Assuredly, it was not a public duty in performing which

this company slandered this man—that is to say, made false statements about his drinking habits and mercantile character. Was it done in the performance of a private moral duty? Assuredly not, again it may be said, without any doubt at all. If morality be kin to religion, it is immoral to speak evil, much more to write evil of a fellow-man to blacken his character and to injure his business, if the allegation be false. Much more is it immoral to do so for that root of all evil, the love of money. To slander from hatred or vengeance for wrong is bad enough; to do so by contract for money is infinitely worse. Therefore this duty by contract is immoral.

Is it a private legal duty? It cannot be. "A contract to do an immoral or illegal thing is void" by the statute of this state. Code, §2749. If, therefore, it be immoral to spy and pry into the habits and business of another, and to make false statements about his character and business respectability, it is also illegal by our statute law. If one makes it his business to pry into the affairs of another in order to coin money for his investigations and information, he must see to it that he communicate nothing that is false. The falsehood of the communication, in print or in writing, maligning in effect the private character and mercantile standing, is itself evidence of malice, legal malice; and unless it be strictly a privileged communication in the performance of a public duty, or a private duty, moral or legal, and then *bona fide* and not "as a cloak for private malice" (Code, §2981), the right of action and redress by damages are the remedies of the injured. In our judgment, this communication, made under this contract, is not the result of a private duty, either moral or legal, in the sense of the statute law of this state, and therefore is not a privileged communication.

Judgment reversed.

See for plaintiff in error: Code, §2974 *et seq.;* Townshend, 262–3; *Van Epps vs. Jones,* 50 *Ga.* 238; Beverly

*et al. vs.* Tappan, 5 Blatchford O. C. 497; 7 Am. R. 322; 17 N. Y. 190; 37 *Id.* 447; 16 *Id.* 369; 30 *Id.* 20; 1 O. M. & R. 181; 13 C. B. 333; 5 E. & B. 344; 6 B. & C. 154; 3 O. & B. 160.

For defendant in error: Code, §§2974, 2980, par. 2; *Pearce vs. Brower,* 72 *Ga.* 243; 51 *Id.* 118, *Lester vs. Thurmond;* Ormsby *vs.* Douglass, 37 N. Y. 477; Vanduzee *vs.* McGregor, 27 Am. Dec., and authorities cited.